RECEIVED

JUN 22 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT                    b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| MICHELE PAYNE, et al. | CIVIL ACTION NO. 1:13-CV-02732 |
|---|---|
| VERSUS | CHIEF JUDGE DRELL |
| ERIC K. FANNING,[1] SECRETARY OF THE ARMY | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a complaint by plaintiff Michele Payne ("Payne"), Patricia Lynn Holaway ("Holaway"), and Jacqueline Calhoun ("Calhoun") on September 23, 2013 (Doc. 1), apparently pursuant to the Equal Employment Opportunity Act since Payne and Holaway attached final EEO decisions to the complaint (Docs. 1-2, 1-3). The named defendant is the U.S. Department of the Army through its Secretary, John M. McHugh.

Plaintiffs allege they are all Caucasian women who were employed as counselors for the Army Substance Abuse Program ("ASAP") at Fort Polk, Louisiana (Doc. 1). Plaintiffs' first-line supervisor was Clinical Program Manager Charlayne Lacking, an African-American, and their second line supervisor was ASAP Manager Thomas Gilliard, also an African-American. Plaintiff Payne was in a supervisory position, while Plaintiff Holaway was a counselor. Plaintiff Calhoun replaced Payne

---

[1] Eric K. Fanning became Acting Secretary of the Army on November 3, 2015.

when Payne was demoted.  All three Plaintiffs claim racial discrimination, reprisals, and a hostile work environment caused by Lacking and others, but allege different acts and events.[2]   Holaway and Payne also allege discrimination due to perceived mental disabilities (Doc. 50).   Payne alleges that Defendant deprived her of her constitutional rights of freedom of speech and association.  Plaintiffs also allege they were denied equal protection of the law and "the ability to provide adequate professional and ethical care to patients."

Plaintiffs contend that Defendant's actions caused the constructive discharge of Payne and Holaway and the forced, involuntary relocation and leave of Calhoun (Doc. 1).   Plaintiffs seek back pay and benefits, reinstatement or front pay and benefits, compensatory damages for emotional distress, punitive damages, attorney fees and costs, and legal interest.

Defendant answered the complaint (Doc. 6) and filed a Motion to Dismiss and for Summary Judgment (Doc. 39).  Plaintiffs filed a response (Docs. 50, 51, 57) to which Defendant replied (Doc. 56).

Plaintiffs did not set forth the statutory bases for their claims in their complaint, and Defendant did not file a motion for a more definite statement.  At oral argument on May 24, 2016, Plaintiffs' attorney stated that Plaintiffs' discrimination and retaliation claims are pursuant to Title VII of the Civil Rights Act of 1964, 42

---

[2] These cases appear to be improperly joined, see Fed.R.Civ.P. Rule 20, but Defendant did not file a motion to sever.

U.S.C. § 2000e-1, *et seq.*; their whistleblower claims are pursuant to the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8); and their disability claims are pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* and the Americans with Disabilities Act of 2008., 42 U.S.C. § 12101, *et seq.*

Plaintiffs also stated at oral argument that they are pursuing claims for violations of their constitutional rights and supplemental state law claims. Since Plaintiffs did not refer to state law or allege the statutory bases for supplemental state law claims in their complaint, those claims will not be considered herein. See Fed.R.Civ.P. Rule 8(a)(1).

Defendant submitted uncertified excerpts of "Fact Finding Conferences" for each plaintiff (Doc. 39-3), as well as uncertified deposition excerpts (Doc. 39-4, pp. 58/95-91/95; Doc. 39-5, pp. 28-30, 32-36/86-86). Plaintiffs also submitted uncertified deposition excerpts (Doc. 50). Since those submissions did not include the court reporter's certificate of authenticity, they will not be considered for purposes of these motions. See Fed.R.Civ.P. Rules 30(f) and F.R.E. Rule 901.

## 1. Payne

Payne began working at ASAP in 2001, was promoted from Counseling Psychologist to Supervisory Counseling Psychologist on March 3, 2011, and resigned on November 27, 2011 after fifteen years of federal service (Doc. 1). Payne contends Lacking and Gilliard retaliated against her for placing a notice of a Tea Party meeting on her door (Doc. 1). Payne contends Lacking told her the notice violated the Hatch Act rule against political activity (Doc. 1). When Payne asked the attorney advisor

whether the notice violated the Hatch Act and he responded that it did not, Payne forwarded his response to Lacking (Doc. 1).  Payne claims Lacking and Gilliard began retaliating against her for "whistleblowing" through a series of acts that created a hostile work environment and resulted in her demotion to a job in which she was not allowed to perform patient care, so Payne resigned (Doc. 1).

### 2.  Holaway

Holaway was hired by ASAP on January 29, 2011 and resigned on August 20, 2012 (Doc. 1).  Holaway contends that, when she was hired on January 2, 2011, she did not receive the same employment incentives as other employees, such as student loan repayment, pay setting, and relocation allowance. Holaway claims that, on September 27, 2011, her request to file a Federal Employee Notice of Traumatic Injury for a slip-and-fall accident was denied.  Holaway also contends she told both Lacking and Gilliard about her accidental injury, but did not fill out an accident form or file a claim because, as a new federal employee, she did not know the procedure. Four months later, Holaway told Starks about not being given the injury report paperwork when she fell and broke her foot, and Starks replied that her supervisors needed some training on that (Doc. 1).  Holaway claims that, between January 2011 and August 2012, she was assigned a greater quantity and more difficult work assignments than the other counselors.

Holaway alleges that, on August 6, 2012, Mr. Yaborough, an EEO counselor, tried to interview her about Calhoun's EEO complaint, but Holaway was scared of

losing her job if she talked to him (Doc. 1).  On August 20, 2012, Holaway resigned, allegedly due to retaliation and fear of reprisals (Doc. 1).

### 3. Calhoun

In March 2012, Calhoun was hired by ASAP in Hawaii.  Calhoun accepted a promotion to Supervisory Counseling Psychologist at ASAP in Ft. Polk (the position formerly held by Payne), and began working at Ft. Polk on May 7, 2012 (Doc. 1).

Calhoun contends the discrimination, harassment, and retaliation by Lacking and Gilliard began on June 29, 2012 (Doc. 1).  Calhoun alleges she was denied the appropriate patient care information software (Doc. 1).  Calhoun alleges that Lacking and Gilliard also inquired about her health, so she felt forced to tell them she had been seeing physicians to rule out a "serious health issue" (Doc. 1).  Lacking advised Calhoun to speak to Holaway because she had suffered from similar health issues (Doc. 1).  Calhoun contends that Lacking started writing her up in the same manner she had written-up Payne (Doc. 1).

On July 17, 2012, Calhoun transferred from Ft. Polk ASAP to Joint Base Lewis-McChord ("JBLM") as a Senior Counseling Psychologist (Doc. 1).  In March 2013, Calhoun was denied a transfer to Fort Stewart, Georgia, where she had worked before.  Her marriage allegedly suffered, and she had to take a leave of absence without pay for one year to handle family issues (Doc. 10).  After taking over one year of leave, Calhoun resigned from her employment at Joint Base Lewis-McChord due to "family problems" that had been caused by the "extreme hostile work environment at Fort Polk" (Doc. 395, p. 43/86).

Law and Analysis

I. Motion to Dismiss

Defendant argues the Court lacks subject matter jurisdiction over some of
Plaintiffs' claims.  Lack of subject matter jurisdiction may be found on any one of the
following basis: (1) the complaint alone; (2) the complaint supplemented by
undisputed facts evidenced in the record; or (3) the complaint supplemented by
undisputed facts plus the Court's resolution of disputed facts.  See Robinson v.
TCI/US West Communications, Inc., 117 F.3d 900 (5th Cir. 1997).  Where subject
matter jurisdiction is being challenged, the trial court is free to weigh the evidence
and resolve factual disputes in order to satisfy itself that it has the power to hear the
case.  No presumptive truthfulness attaches to the plaintiff's allegations.  Montez v.
Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

A.  Preemption

Defendant contends that Title VII preempts Plaintiffs' constitutional claims
because the United States has not waived sovereign immunity.

Congress has waived the federal government's sovereign immunity for Title
VII suits alleging discrimination in a government workplace based on race, sex, color,
religion, or national origin by creating an exclusive, preemptive administrative and
judicial scheme.  See 42 U.S.C. § 2000e-16; Brown v. General Services
Administration, 425 U.S. 820, 829 (1976).  The provisions of Title VII applicable to
claims of racial discrimination in federal employment are the exclusive and
preemptive remedy for such claims.  See Rowe v. Sullivan, 967 F.2d 186, 189 (5th Cir.

6

1992) (citing <u>Brown</u>, 425 U.S. at 829).    Therefore, plaintiffs' allegations of constitutional violations based on discrimination are preempted by Title VII and do not afford an independent ground for relief. <u>See</u> <u>Jackson v. Widnall</u>, 99 F.3d 710, 716 (5th Cir. 1996) (citing <u>Rowe</u>, 967 F.2d at 189).

Plaintiffs appear to argue that Defendant's sovereign immunity should be excused by equitable tolling (Doc. 50, p. 59).  However, equitable tolling is unrelated to, and does not waive, sovereign immunity.  Plaintiffs also argue that Defendant should not be allowed to defeat their claims with "forms and technicalities" (Doc. 50, p. 161).    However, this "technicality" is jurisdictional and bars consideration of Plaintiffs' constitutional claims.

Accordingly, Defendant's motion to dismiss Plaintiffs' constitutional claims should be granted and Plaintiffs' constitutional discrimination claims should be dismissed with prejudice.

## B. Exhaustion of Title VII Claims

Defendant next argues that Plaintiffs have not exhausted their administrative remedies as to their Title VII claims.

Payne's formal complaint of discrimination, filed on February 6, 2012, alleges discrimination, reprisals for the EEO complaint, and hostile work environment (Doc. 39-4, pp. 22-23/95).  On September 5, 2012, Calhoun alleged in her formal complaint that she was subjected to race discrimination, harassment, and reprisals for previous EEO activity (Doc. 39-5, pp. 48-49/86).    On October 11, 2012, Holaway alleged in an EEO complaint that she was subjected to discrimination—student loan

reimbursement discrepancy, pay grade discrepancy, offered benefits discrepancy–reprisals for whistleblowing, harassment, hostility, and constructive discharge (Doc. 39-5, pp. 74-75/86).

A federal employee must exhaust administrative remedies against an employer before suing under Title VII.  See Thomas v. Napolitano, 449 Fed.Appx. 373, 374-75 (5th Cir. 2011) (citing Francis v. Brown, 58 F.3d 191, 192 (5th Cir. 1995)). Cases of discrimination subject to 5 U.S.A. § 7702 must be filed under the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), the Age Discrimination in Employment Act (29 U.S.C. 633a(c)), or the Fair Labor Standards Act (29 U.S.C. § 216(b)).  See 5 U.S.C. § 7703(b)(2).  These provisions require exhaustion of administrative remedies before a federal court may have jurisdiction.  Administrative remedies are exhausted when the federal agency gives notice of its final action, or when 180 days have passed since the initial formal charge was filed with the agency.  See 42 U.S.C. § 2000e–16(c); see also Thomas, 449 Fed.Appx. at 374-75 (citing Martinez v. Department of U.S. Army, 317 F.3d 511, 513 (5th Cir. 2003)); Munoz v. Aldridge, 894 F.2d 1489, 1493–94 (5th Cir. 1990).

Plaintiffs' Title VII claims are exhausted.  The Department of the Army issued a final decision on Payne's EEO complaint on July 26, 2013, finding Payne was not subjected to race discrimination or reprisals for engaging in protected EEO activity (Doc. 1-2).  The Department of the Army issued a final decision on Holaway's EEO complaint on August 20, 2013, finding Holaway was not subjected to discrimination (Doc. 1-3).  The final decision on Calhoun's EEO complaint is not in the record before

the Court.  If no final decision was rendered, Calhoun's claims are considered exhausted because more than 180 days have passed without a decision, since Calhoun's EEO complaint was filed.  See 42 U.S.C. § 2000e–16(c).

Defendant's motion to dismiss Plaintiffs' Title VII claims for lack of exhaustion should be denied.

C. Exhaustion of WPA Claims

In 1989, Congress enacted the Whistleblower Protection Act ("WPA") to increase protections for whistleblowers by prohibiting adverse employment actions taken because a federal employee discloses information that the employee reasonably believes evidences a violation of any law or actions that pose a substantial and specific danger to public health or safety.  See 5 U.S.C. § 2302(b)(8); see also Grisham v. United States, 103 F.3d 24, 26 (5th Cir. 1997).  The WPA increases protections for whistleblowers within the context of the Civil Service Reform Act.  Grisham, 103 F.3d at 27.

The WPA does not give an aggrieved employee the right directly to seek relief in federal court.  5 U.S.C. § 7703; see Robinson v. Rubin, 77 F.Supp.2d 784, 793 (S.D. Tex. 1999).  Federal employees must exhaust their administrative remedies by first bringing complaints of WPA violations to the Office of the Special Counsel ("OSC").  See 5 U.S.C. § 1214(a)(1)(A).  If not satisfied with OSC's initial determination, they can appeal to the Merit Systems Protection Board ("MSPB").  See 5 U.S.C. § 1214(a)(3); 5 C.F.R. § 1209.5(a); Ellison v. Merit Systems Protection Board, 7 F.3d

1031, 1035–36 (Fed. Cir. 1993).  Employees who receive adverse MSPB rulings can seek judicial review.  See 5 U.S.C. § 7703.

However, in a "mixed case" involving both whistleblower and discrimination claims, an aggrieved federal employee can either: (1) seek administrative relief through the MSPB, an independent, quasi-judicial federal administrative agency that was established to review civil service decisions, 5 U.S.C. § 1221; or (2) file a complaint with the employing agency's EEO department, 5 U.S.C. § 7702.  See Robinson, 77 F.Supp.2d at 793 (citing McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995)); see also Johnson v. Danzig, 2001 WL 562080 at *2 (E.D. La. 2001).  The EEO or the MSPB decide both the issues of discrimination and the adverse employment action.  See 29 C.F.R. § 1614.302; 5 C.F.R. § 1201.156.  Once the employee who initiates either of these procedural paths receives a final determination, the employee may pursue judicial review of the final determination.  See 29 C.F.R. § 1614.310; 5 U.S.C. § 7703(a)(1), (b)(1)-(2).

Plaintiffs claim they engaged in "whistleblowing activity" because they filed EEO complaints of discrimination.  However, the filing of an EEOC complaint does not encompass whistleblowing activity, which usually involves disclosures outside of established procedures.  See Fleeger v. Principi, 221 Fed.Appx. 111, 117 (3d Cir. 2007).  An EEOC claim is not a disclosure of information by an employee that the employee reasonably believes evidences a violation of any law.  See Spruill v. Merit Systems Protection Bd., 978 F.2d 679, 691-692 (Fed. Cir. 1992) (the WPA refers to disclosures of fraud, waste, abuse, and unnecessary Government expenditures).

10

Congress purposefully drew a distinction between reprisal based on disclosure of information (a whistleblowing disclosure within the meaning of 5 U.S.C. § 2302(b)(8)) and reprisal based upon exercising a right to complain (a non-whistleblowing disclosure under 5 U.S.C. § 2302(b)(8)(A)). See Serrao v. Merit Sys. Prot. Bd., 95 F.3d 1569, 1575 (Fed. Cir. 1996) (citing Spruill, 978 F.2d at 690).

Plaintiffs' EEO complaints did not disclose any of the type of information typically raised in a whistleblower disclosure.  Rather, Plaintiffs' complaints only raise claims of discrimination and retaliation for having filed EEO complaints (Doc. 39-3, pp. 22-24/95; Doc. 39-5, pp. 45-47/86; Doc. 39-5, pp. 74-75/86).

Payne also claims she suffered retaliation for whistleblowing when she informed others that Lacking had ordered her to remove a Tea Party meeting notice from her office door (Doc. 39-4p pp. 212-23/95).  Payne contends Lacking violated her constitutional rights of freedom of speech and association.  As previously discussed, Payne's First Amendment claims are preempted by Title VII. See Brown, 425 U.S. at 835; Jackson, 99 F.3d at 716; Rowe, 967 F.2d at 189.  Payne also contends that another employee was allowed to keep a Selma March poster in her office.  However, it appears from the EEO's final decision that the problem with Payne's poster was that it was placed in a common area, on the outside of her door, where only official government posters and fliers were permitted (Doc. 1-2, p. 11/30).  Therefore, Payne's comparator is not analogous to her case.

Plaintiffs did not file whistleblower claims cognizable under the WPA. Defendant's motion to dismiss Plaintiffs' "whistleblower claims" should be granted.

C. Timeliness of Exhaustion of Administrative Remedies

1. Calhoun

Defendant argues that Calhoun's claims should be dismissed for untimeliness. Defendant contends that Calhoun failed to file her EEO complaint within fifteen days of receiving her notice, and never presented the EEOC with any claims related to her employment at JBLM.

Timely filing with the EEOC is a jurisdictional prerequisite to Title VII relief. A court must make an independent determination of whether jurisdiction exists rather than deferring to the EEO. See Chappell v. Emco Mach. Works Co., 601 F.2d 1295, 1303-1304 (5th Cir. 1979); see also, McCullum v. Puckett Machinery Co., 628 Fed. Appx. 225, 232 n.17 (5th Cir. 2015).

First, a federal employee claiming discrimination must contact an EEO counselor within forty-five days of the allegedly discriminatory incident or, in the case of personnel action, within 45 days of the effective date of the action. See 29 C.F.R. § 1614.105(a)(1); Joseph v. Potter, 2006 WL 1581894, at *2 (S.D. Tex. 2006). If the claim is not resolved at this stage, the EEO counselor has thirty days in which to notify the employee of his right to file a formal discrimination complaint with the employing agency. See 29 C.F.R. § 1614.105(d); Joseph, 2006 WL 1591894 at *2. The employee then has fifteen days from receiving this notice to file a formal complaint of discrimination. See 29 C.F.R. § 1614.105(d); Casimier v. U.S. Postal Service, 142 Fed.Appx. 201, *2 n.1 (5th Cir. 2005); Joseph, 2006 WL 1591894 at *2.

12

If the employee fails to file a formal EEO complaint within fifteen days of receiving notice of his right to do so, the employee has failed to timely exhaust administrative remedies, and is therefore barred from pursuing a discrimination claim in federal court. See Oaxaca v. Roscoe, 641 F.2d 386, 388 (5th Cir. 1981); see also Casimier, 142 Fed. Appx. at 204 n. 1. The time limits established by Title VII and the regulations promulgated thereunder are subject to equitable tolling and waiver. See 29 C.F.R. § 1614.604(c); Joseph, 2006 WL 1581894, *2 (citing Oaxaca, 641 F.2d at 391; see also Bowers v. Nicholson, 2007 WL 3047223, at *6 (S.D. Tex. 2007), aff'd, 271 Fed.Appx. 446 (5th Cir. 2008) (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 95-96 (1990)). The Fifth Circuit has identified three potential bases for equitable tolling in an EEOC case: (1) the pendency of a suit between the parties in the wrong forum under state law; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's affirmative acts that mislead the plaintiff and induced him not to act within the limitations period; and (3) the EEOC misled plaintiff by giving him incorrect information that leads the individual to file an untimely charge. See Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 880 (5th Cir. 2003), cert. den., 540 U.S. 1107 (2004); see also, Kirkland v. Big Lots Store, Inc., 547 Fed. Appx. 570, 573 (5th Cir. 2013). A party who invokes equitable tolling bears the burden of demonstrating that it applies. See Manning, 332 F.3d at 880.

Calhoun received her notice on August 13, 2012 (Doc. 39-5, p. 50/86) and filed her formal complaint on September 5, 2012, outside of the fifteen-day period (Doc. 39-

5, pp. 45-47/86).  Calhoun argues that equitable tolling should apply because the last
day for her to file her EEO complaint, August 28, 2012, was the day she received
notice that her patients were removed from her care (Doc. 50, Brief p. 64).  That
excuse does not satisfy any of the Fifth Circuit's grounds for equitable tolling in an
EEOC case. See Manning, 332 F.3d at 880; Billingsley v. Principi, 2003 WL 22703217
at *4 (W.D. Tex. 2003).  Therefore, this Court cannot consider Calhoun's EEO claims
due to her failure to timely exhaust her administrative remedies.

Defendant also contends Calhoun's claims relating to her employment at
JBLM should be dismissed because she never presented these claims to the EEO for
investigation.[3]  Federal employees must initiate contact with an EEO Counselor
within 45 days of the date of the matter alleged to be discriminatory or, in the case of
personnel action, within 45 days of the effective date of the actions.   29 C.F.R. §
1614.105(a)(1).   The 45-day limitation period begins to run from the time the
discriminatory event or personnel action occurs, not when the plaintiff discovers or
can prove that a discriminatory intent motivated the action. See Webster v. Chertoff,
2008 WL 4791584, at *3 (N.D. Tex.  2008) (citing Pacheco v. Rice, 966 F.2d 904, 906
(5th Cir. 1992)).  Failure to timely initiate contact with an EEO counselor or to file a
formal EEO complaint within the required period will bar subsequent review of the
claim in federal court absent waiver, estoppel, or equitable tolling, and it is the

---

[3] Calhoun resigned from federal service on May 12, 2014 due to the "extreme hostile work environment
and the discriminatory practices at Fort Polk, LA" that she allegedly endured in 2012 (Doc. 39-5, p.
43/86).

14

employee's burden to establish these exceptions.  See Webster, 2008 WL 4791584, at *3 (citing Pacheco, 966 F.2d at 905).

There is no evidence in the record that Calhoun initiated contact with an EEO counselor or filed a formal EEO complaint as to claims arising from her employment at JBLM.  Therefore, Calhoun failed to timely exhaust her administrative remedies as to any claims she has regarding her employment at JBLM.

Calhoun's Title VII claims should be dismissed for failure to timely exhaust her administrative remedies.

### 2. Holaway

Defendant further contends that Holaway's allegations of discrimination in her benefits and pay did not occur within 45 days of her initiating contact with the EEO Office on August 20, 2012.[4]   See 29 C.F.R. § 1614.105(a)(1); Joseph, 2006 WL 1581894, at *2.

In a formal EEO complaint received on October 11, 2012, Holaway alleged that she was subjected to discrimination (student loan reimbursement discrepancy, pay grade discrepancy, offered benefits discrepancy) (Doc. 39-5, pp. 74-75/86).  Holaway initiated contact with an EEO counselor on August 20, 2012 (Doc. 39-5, p. 75/86).

According to Holaway's formal complaint, Holaway was notified that she would not receive a student loan reimbursement in April 2011 (Doc. 39-5, p. 76/86).  Since

--------------------------------

[4] Defendant conceded that Holaway's allegations as to harassment after the July focus group were timely (Doc. 56, p. 10/16).

Holaway did not contact an EEO counselor until August 20, 2012, she was clearly outside of the 45-day time limit for her student loan reimbursement claim.

Holaway's complaint also shows that she was hired in January 2011, and questioned her starting pay grade when she was hired (Doc. 39-5, p. 76/86). Holaway resigned on August 20, 2012 (Doc. 39-5, p. 77/86). Under the Fair Pay Act, a federal employee may pursue a Title VII claim regardless of when a discriminatory pay decision was made, as long as the employee received disparate compensation resulting from the decision within the relevant limitations period. See 42 U.S.C. §§ 2000e–16(f), 2000e–5(e)(3); Moore v. Napolitano, 2009 WL 4723169, at *10 (E.D. La. 2009). In effect, the Fair Pay Act removes the 45 day timing requirement of 29 C.F.R. § 1614.105(a)(1) with respect to claims of discriminatory compensation. See 42 U.S.C. § 2000e–5(e)(3)(B); Moore, 2009 WL 4723169, at *10.

Since the parties have not shown when Holaway received a pay increase, it cannot be determined whether her initial contact with the EEO counselor, on August 20, 2012, was within 45 days of the last day she receive allegedly discriminatory pay. See Moore, 2009 WL 4723169, at *10. It cannot be determined on the record before the Court whether Holaway's claim of pay grade discrimination was timely. Therefore, Defendant's motion to dismiss Holaway's claim of discrimination in her pay on the ground that it was not timely exhausted should be denied.

Holaway also claims she was discriminated against in the benefits offered to her (Doc. 39-5, p. 74-75/86). Holaway contends that, when she fell and broke her foot, she was not informed of her right to file a "Federal Employee's Notice of Traumatic

16

Injury and Claim for Continuation of Pay/Compensation" form, but she discovered "a few months later" that another coworker had been offered those benefits and complained about it to her supervisor on May 24, 2012 (Doc. 39-5, p. 76/86).  Since Holaway's initial contact with an EEO counselor was not until August 20, 2012, her claim for discrimination in offered benefits falls outside of the 45-day time limit.

Holaway also alleges that she was subjected to reprisals for filing an EEO complaint in the form of harassment, hostility, and constructive discharge: on July 19, 2012 (ostracized in a focus group); July 31, 2012 (excluded from a training opportunity); August 3, 2012 (Letter of Counseling from Lacking); August 8, 2012 (message from Lacking as to her job performance); August 2012 (increase in Holaway's caseload) (Doc. 39-5, p. 77/86); and August 20, 2012 (constructive discharge when Holaway resigned ).  Holaway contacted an EEO counselor on August 20, 2012, within 45 days from the earliest cited act of reprisal.   Therefore, Holaway's administrative remedies were timely exhausted as to these claims.

Holaway failed to timely exhaust her administrative remedies as to her claims of discrimination in student loan reimbursement and benefits for her foot injury, and Defendant's motion to dismiss should be granted as to those claims.  Defendant's motion to dismiss should be denied on the issues of exhaustion of Holaway's claims of discrimination in her pay grade and reprisals.

II. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the Court shall grant a summary judgment "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order.

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), cert. den., 528 U.S. 906 (1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact for trial. In this analysis, the Court reviews the facts and draws all inferences most favorable to the nonmovant. See Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not

competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992), cert. den., 506 U.S. 825 (1992).

Defendants contend that Plaintiffs cannot show they were subjected to discrimination or reprisals for their complaints of discrimination.

Title VII makes it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 513 (1993). In a Title VII claim, the plaintiff must establish a prima facie case that the defendant made an employment decision motivated by a protected factor. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995). The defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. See Mayberry, 55 F.3d at 1089. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. See Mayberry, 55 F.3d at 1089.

The district court must decide which party's explanation of the employer's motivation it believes. See St. Mary's Honor Ctr., 509 U.S. at 511. It is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination. See id.

An adverse employment action is one that affects employment or alters the conditions or the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (hostile work environment claim).    Title VII was designed to address ultimate employment decisions that include acts such as hiring, granting leave, discharging, promoting, and compensating.  See Burger v. Central Apartment Management, Inc., 168 F.3d 875, 878 (5th Cir. 1999); see also Jackson v. Honeywell Intern., Inc., 601 Fed.Appx. 280, 289 (5th Cir. 2015).  In contrast, Title VII's anti-retaliation provision prohibits an employer from discriminating against any of his employees for engaging in protected conduct, without specifying the prohibited employer acts.  See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 62.  The anti-retaliation provision is not limited to discriminatory actions that affect the terms and conditions of employment.  See id., at 64.  The anti-retaliation provision protects an individual from retaliation that produces an injury or harm.  See id. at 67.  To prove a claim under Title VII's anti-retaliation provision, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination to the EEOC.  See id. at 68; see also Thompson, 562 U.S. at 174; Brandon v. Sage Corp., 808 F.3d 266, 270 (5th Cir. 2015).   The standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII

complaint.   The focus is on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position.   See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 69-70.

A. Holaway's Title VII Claims

Holaway alleges racial discrimination as to her pay grade and retaliation for her discrimination complaints.   Defendant contends Holaway failed to state a claim for racial discrimination because she was not subjected to an adverse action, and her proffered comparators who were not Caucasian were not similarly situated to Holaway.   Defendant also contends that Holaway's retaliation/reprisal claim fails because she did not engage in protected activity, she was not subjected to a materially adverse action after she participated in the July 19, 2012 focus group, and she cannot establish "but-for" causation.

To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff must show that she was paid less than a member of a different race was paid for work requiring substantially the same responsibility.   See Pittman v. Hattiesburg Mun. Separate School Dist., 644 F.2d 1071, 1074 (5th Cir. 1981).   Holaway contends in her deposition and brief that she was hired by the ASAP at a lower pay grade (GS-9), allegedly due to her lack of drug and alcohol certifications, than Denise Wyche (black), Satya Bollam (Asian), Debra Roberson (black), Ms. Bolen (Indian), Ava Lafaye (white), Karla Gralapp (white), Kimberly Sims (white), Steven McClendon (white), and Emily Druitt (white) (Doc. 39-3, pp. 97-

98/217).  Holaway contends that Wyche and Bollam were hired at GS-11 despite their lack of full certification (Doc. 39-5, p. 76/86).

Defendant contends in a statement of undisputed facts that the non-Caucasian employees who started at a salary higher than Holaway all had their drug and alcohol certification and Holaway did not (Doc. 39-1, p. 37/77).  Defendant further shows that Holaway was promoted to a higher pay grade (GS-11) when she obtained her certification (Doc. 39-1, pp. 37-38/77).   Defendant has given a legitimate, non-discriminatory reason for the disparity in the starting salaries.  See Mayberry, 55 F.3d at 1089.  Holaway has not provided any evidence to show that Defendant discriminated against her in her pay grade due to race, and Defendant's reason for the disparity is credible.

Since there are no genuine issues of material fact which would preclude a summary judgment, Defendant's motion for summary judgment should be granted as to Holaway's claim of racial discrimination in her pay grade.

Holaway also contends she was retaliated against for complaining about discrimination.  Holaway contends she suffered reprisals after she was named as a witness in an EEO complaint investigation in July 2012.

A prima facie case of retaliation exists if the plaintiff establishes that: (1) she participated in statutorily protected activity; (2) she received an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  See Mayberry, 55 F.3d at 1092 (citing Armstrong v. City of Dallas, 997 F.2d 62, 65 n. 3 (5th Cir. 1993)).   To prove a claim, the plaintiff need not show

22

that the protected activity was the sole factor motivating the adverse action, but must show that "but-for" the protected activity, she would not have been subjected to the adverse employment action. See Long v. Eastfield College, 88 F.3d 300, 305 n. 4 (5th Cir. 1996); Nowlin v. Resolution Trust Corp., 33 F.3d 498, 507 (5th Cir. 1994).  The timing of an adverse employment action can be a significant, although not necessarily determinative, factor. See Mayberry, 55 F.3d at 1092.

Defendant  contends  that,  although  complaining  about  perceived discrimination is a protected activity, Holaway cannot show that she suffered any adverse employment action as a result.

Holaway alleges that she suffered reprisals on: July 19, 2012 (ostracized by the participants in the focus group[5]); July 31, 2012 (excluded from a training opportunity); July 31, 2012 (email from Lacking chastising Holaway for not participating in training); August 3, 2012 (discussion with Lacking about workplace stress); August 8, 2012 (message from Lacking as to her job performance); August 2012 (increase in Holaway's caseload); and August 20, 2012 (constructive discharge when Holaway resigned) (Doc. 39-5, p. 77/86).

Ostracism by one's co-workers is not an adverse employment action.  See Roberts v. Unitrin Specialty Lines Ins. Co., 405 Fed.Appx. 874, 878 (5th Cir. 2010); see also Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 533 n. 2 (5th Cir.

---

[5] Due to allegations by Payne, Supervisor Bobbi Stark set up a "focus group" meeting on July 19, 2012, to explore the possibility that Lacking had been discriminating against employees (Doc. 39-1, pp. 26, 38/77).

2003), cert. den., 540 U.S. 817 (2003) (citing <u>Mota v. University of Texas Houston Health Science Center</u>, 261 F.3d 512, 521 (5th Cir. 2001).  Therefore, Holaway's claim of ostracism is not cognizable under Title VII.

Claims of denial of training opportunities do not constitute an adverse employment action when the training is peripheral to plaintiff's main duties and plaintiff produces no significant evidence that a denial of such training would tend to affect employment status or benefits.  <u>See Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 406–407 (5th Cir. 1999).  Holaway alleges that, on July 31, 2012, Lacking "intimidated" her by chastising her for failing to attend a local training opportunity that several of her co-workers attended (Doc. 39-5, p. 77/86).  Holaway further claims that Lacking and Gilliard cancelled a previously approved training opportunity scheduled for September 2012, telling her there was not enough money to send her (Doc. 39-5, p. 77/86).  There is an email from Lacking, dated September 5, 2012, showing that Holaway was not on the list to participate in a training session in Lafayette on Setpember 6, 2012 (Doc. 51-6).  To the extent this email is evidence that Holaway was denied a training opportunity, the movant has not adduced any evidence to show, and has not carried his burden of proving, that the denial of a training opportunity to Holaway, in September 2012, was peripheral to Holaway's main duties as a "counseling psychologist"[6] (Doc. 50-4, p. 2/9) and did not affect her employment status or benefits.  Therefore, there is a genuine issue of material fact

---

[6] Holaway explained that, although her job title at Ft. Polk was "counseling psychologist," she did not have a Ph.D. and was not a psychologist (Doc. 50-4, 2/ 29).

as to whether the denial of a training opportunity to Holaway was an adverse employment action.

Holaway also alleges that: on July 31, 2012 she received an email from Lacking chastising her for not participating in training; on August 3, 2012 Lacking "pressured" her into discussing workplace problems and stress; and on August 8, 2012 Lacking sent her a message (sent out to all clinicians) that she was watching her job performance.   Since Holaway has not claimed that any of these discussions or messages had an adverse impact on her employment status or benefits, she has not alleged a claim under Title VII.

Holaway contends that Lacking retaliated against her by increasing her caseload in August 2012, and that she handled a higher caseload than others did during most of her tenure at Ft. Polk.  The evidence[7] shows that Holaway's caseload was only average in May through July 2012, rather than the highest (Doc 39-5, p. 5/86).  Although Holaway does not allege or show how many more cases she was assigned in August 2012, Defendant has not adduced any evidence to show that Holaway's caseload was not increased in August 2012.  Therefore, Defendant has not carried his burden of proving there are no genuine issues of material fact as to whether Holaway's claim of an increased workload in August 2012 does not amount to an adverse employment action sufficient to establish a retaliation claim.  See

_____

[7] Defendant submitted a chart showing each clinician's caseload in May through July 2012 (Doc. 39-5, p. 5/86).

Reinhardt v. Albuquerque Public Schools Bd. Of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010).  Therefore, Defendant's motion for summary judgment should be denied on this issue.

Holaway also contends she was subjected to a hostile work environment.  The elements of a hostile work environment claim are: (1) racially discriminatory intimidation, ridicule, and insults that are, (2) sufficiently severe or pervasive that they, (3) alter the conditions of employment, and (4) create an abusive working environment.  See Harris v. Forklift Systems, 510 U.S. 17, 21 (1993); see also Stewart v. Miss. Transp. Com'n, 586 F.3d 321 (5th Cir. 2009).  In determining whether a working environment is hostile or abusive, all circumstances must be considered, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  See Harris, 510 U.S. at 21-22.  A plaintiff must show that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive work environment.  See Harris, 510 U.S. at 21.

Holaway's allegations of a hostile work environment are also alleged as reprisals and are discussed above: (1) ostracized by the participants in the focus group on July 19, 2012; (2) excluded from a training opportunity on July 31, 2012; (3) an email from Lacking chastising Holaway for not participating in training on July 31, 2012; (4) discussion with Lacking about workplace stress on August 3, 2012; (5) a message from Lacking as to her job performance on August 8, 2012; (6) an increase

26

in Holaway's caseload in August 2012; and (7) constructive discharge when Holaway resigned on August 20, 2012.  Since Holaway has not alleged she was ever subjected to racially discriminatory intimidation, ridicule, and insults, she cannot show she was subjected to a hostile work environment.

Finally, Holaway claims she was "constructively discharged" when she resigned on August 20, 20 12 due to a continuous pattern of workplace discrimination, harassment, and hostility.  To prove constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.  See Shafer v. Army & Air Force Exch. Serv., 376 F.3d 386, 397 (5th Cir. 2004), op. clarified, 2004 WL 2107672 (5th Cir. 2004).  Since Defendant has not shown there are no genuine issues of material fact as to Holaway's claims of reprisals through being denied a training opportunity and an increased workload, Defendant cannot show there are no genuine issues of material fact on the issue of whether Holaway was constructively discharged.

Since there are no genuine issues of material fact that would preclude a summary judgment, Defendants' motion for summary judgment should be granted as to Holaway's Title VII claims for racial discrimination as to her pay grade, reprisals through ostracism and emails, and a hostile work environment.

However, since there are genuine issues of material fact as to Holaway's Title VII claims of retaliation through denial of a training opportunity and an increase in Holaway's workload in August 2012, and whether Holaway was constructively

discharged, Defendant's motion for summary judgment should be denied on these issues.

B. Payne's Title VII Claims

Payne claims Lacking and Gilliard retaliated against her for placing a notice of a Tea Party meeting on the outside of her office door (Doc. 1). Payne contends that Lacking told her the Tea Party was racist, the notice violated the Hatch Act rule against political activity, and she could be suspended or fired over it (Doc. 1). When Payne asked the attorney advisor whether the notice violated the Hatch Act and he responded that it did not, Payne forwarded his response to Lacking (Doc. 1). Payne contends that Lacking and Gilliard began retaliating against her for "whistleblowing," and Lacking violated her freedom of speech with respect to the Tea Party poster through a series of acts that created a hostile work environment. Payne contends that she was ultimately demoted to a job in which she was not allowed to perform patient care, so she left her job (Doc. 1). 5 C.F.R. § 4.1.

Payne contends that she received a Letter of Warning from Lacking on September 12, 2011 and, on September 13, 2011, Lacking placed Payne on a Focused Professional Practice Evaluation ("FPPE") and removed Payne's duties (placed her on leave) until March 30, 2012. Payne's staff was reassigned and she was informed that Lacking was in the process of having her removed as a Clinical Supervisor because she had been placed on the FPPE. Payne contends that Lacking and Gilliard did not explain what she had done wrong or afford her the opportunity to review the cited records until January 2012. Payne also contends Lacking reviewed 27 of

28

Payne's records and submitted alleged deficiencies, but did not do that to the other counselors.  Payne alleges that, on January 9 2012, Lacking and Gilliard gave Payne an annual performance appraisal of "1 - Failure" because she had been placed on FPPE and no longer supervised employees, and prevented her from transferring to another job.   Payne claims all of this occurred due to racial discrimination and reprisals for having complained that Lacking told her to take down her Tea Party meeting poster.

Payne argues that she was treated far worse than persons who were not the same race, such as Winton Ray Perkins, who counseled patients with the door open, had many records with errors, violated confidentiality, failed to secure his records, and lost records, and Denise Wyche, who did not keep good records.  Payne further contends that "management" failed to investigate the matter.  However, Payne has not provided any evidence to show that Lacking and Gilliard's actions were taken because Payne is Caucasian, or that other similarly situated employees of a different race were treated differently.

Defendant shows that neither Perkins nor Wyche were in supervisory positions and that their performance and conduct issues were not similar to Payne's. Defendant further shows that Payne was given a Letter of Warning for three different incidents of failing to follow rules (Doc. 39-4, p. 14/95), and an FPPE was invoked because of nine different problems concerning her counseling practices (Doc. 39-4, p. 12/95).  Written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where

the employee continues to engage in protected activity.  See Jackson v. Honeywell Int'l, Inc., 601 Fed.Appx. 280, 286 (5th Cir. 2015); see also Mayberry, 55 F.3d at 1089-90 (5th Cir. 1995).

Defendant has not borne the burden of proving there are colorable grounds for Payne having been given unfavorable performance reviews and being placed on FPPE.  Therefore, there are genuine issues of material fact as to whether Payne was retaliated against by Lacking and Gilliard for having posted a Tea Party meeting notice on her door and for having complained to Lacking's and Gilliard's supervisors about being forced to take it down.

Payne also contends Lacking denied her training opportunities on February 10, 2012 and April 17, 2012.  Payne contends counselor Satya Bollam (Asian-American) was allowed to attend training, while she was not.  Again, Defendant has not carried the burden of proving that the denial of training opportunities did not affect Payne's employment status or benefits.  See Shackelford, 190 F.3d at 406–407.  Therefore, there are genuine issues of material fact that would preclude a summary judgment on Payne's claim that she was denied training opportunities.

Payne also contends that she and Lacking spoke solely by email for months, and that Lacking tried to goad her into physical conflict by demeaning her in staff meetings, spreading rumors, allowing another employee to demean her in front of others, and making her wait in the hallway until exactly 0800 before opening her door.  Payne further alleges that, on January 31, 2012, Lacking was confrontational and tried to goad Payne, but Payne did not physically respond, so Lacking issued

Payne a Letter of Counseling on February 10, 2012 for alleged unprofessional conduct.  The Letter of Counseling shows that Payne raised her voice to her Lacking, called Lacking a liar, demanded that she leave Payne's office, and shut the door in Lacking's face, which earned Payne the Letter of Counseling (Doc, 39-1, pp. 37-38-95).

On April 3, 2012, Lacking issued Payne a Letter of Reprimand (Doc. 39-4, p. 43/95), removing a patient from Payne's care to another therapist.  When the patient was notified and went to Payne's office to find out why he was being moved, Lacking wrote Payne up for speaking to the patient after having been instructed not to.  Payne has not shown that she conducted any protected activity for which the Letter of Counseling or reprimand were issued, or that a reasonable person in Payne's position would have believed the Letter of Counseling or the reprimand were issued as a reprisal for EEOC complaints.  Written warnings are not adverse employment actions where colorable grounds exist for disciplinary action.  See Jackson, 601 Fed.Appx. at 286.

Payne alleges that, on March 9, 2012, she was demoted from Supervisory Psychologist to Counseling Psychologist, two days before the end of her probationary period (Doc. 39-4, p. 40/95).  Payne contends this was part of the harassment, intimidation, and discrimination.  It is noted that Payne was demoted from a probationary supervisor status.  It is not clear whether Payne was returned to a position of no lower grade and pay than she had before she was promoted.  Moreover, since Defendant has not shown that Payne's failing performance evaluations and

FPPE were not retaliatory, Defendant has likewise not shown there are no genuine issues of material fact on the issue of whether Payne's demotion was discriminatory or retaliatory.

Payne also asked to be moved to the supervision of Jacqueline Calhoun, the supervisor who had replaced her, or the ASAP Clinical Consultant, Dr. Osorio. Stark and Ross told Payne that she was being detailed to a non-clinical position and relieved of patient care effective that day, September 21, 2012, since she had asked to be moved from Lacking's supervision. Payne complains that she was moved instead of Lacking. Defendant contends Payne was moved because she had alleged that Lacking was discriminating against and harassing other employees as well as herself, so an investigation was launched. Payne has not made a prima facie showing of discrimination or retaliation in the decision to move her to a different department.

Payne further alleges various acts by Lacking, co-worker Iva Lefebvre, and co-worker Steve McClendon that created a hostile work environment. The elements of a hostile work environment claim are: (1) racially discriminatory intimidation, ridicule and insults, that are, (2) sufficiently severe or pervasive that they: (3) alter the conditions of employment, and (4) create an abusive working environment. See Harris, 510 U.S. at 21. Payne has not alleged that she was ever subjected to racially discriminatory intimidation, ridicule, and insults. Therefore, Payne cannot shown that she was subjected to a hostile work environment.

Since there are no genuine issues of material fact that would preclude a summary judgment, Defendants' motion for summary judgment should be granted as

to Payne's Title VII claims of retaliation through issuance of a Letter of Counseling on February 10, 2012 and a Letter of Reprimand on April 3, 2012, and a hostile work environment.

However, since there are genuine issues of material fact as to Payne's Title VII claims of retaliation through denial of a training opportunity, unfovaorable performance evaluations, placing Payne on an FPPE, and demoting Payne from her probations supervisor position, Defendant's motion for summary judgment should be denied on these issues.

C. ADA/Rehabilitation Act Claims

Plaintiffs also allege claims for perceived mental disabilities pursuant to the Rehabilitation Act and the Americans with Disabilities Act ("ADA").

Pursuant to the ADA, an individual is considered to have a disability if that individual either has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or has "a record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(2). The Implementing Regulations define the term "major life activities" to mean "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(i); E.E.O.C. v. Texas Bus Lines, 923 F.Supp. 965, 974 (S.D. Tex. 1996).[8]

_____

[8] Cases interpreting the Rehabilitation Act are often applied to the ADA, a much newer law for which only a limited body of interpretive law exists. See Texas Bus Lines, 923 F.Supp. at 975. The Code of Federal Regulations establishes that, in general, the regulations promulgated to implement the ADA do "not apply a lesser standard than the standard applied under title V of the Rehabilitation Act of

33

The rationale for the "regarded as" part of the definition of the disability was articulated by the Supreme Court in the context of the Rehabilitation Act of 1973 in School Board of Nassau County v. Arline, 480 U.S. 273 (1987). The Court noted that, although an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others might prove just as disabling. Such an impairment might not diminish a person's physical or mental capacities, but nevertheless substantially limits that person's ability to work as a result of the negative reactions of others to the impairment. See Arline, 480 U.S. at 283. The Court concluded that by including "regarded as" in the definition of disability, "Congress acknowledged that society's accumulated myths and fears about disability and diseases are as handicapping as are the physical limitations that flow from actual impairment." See Arline, 480 U.S. at 284; E.E.O.C. v. Texas Bus Lines, 923 F.Supp. 965, 975 (S.D. Tex. 1996).

In order to prevail on the perceived disability theory, a plaintiff must show either that: (1) while she had a physical or mental impairment, it did not substantially limit her ability to perform major life activities; or alternatively that (2) she did not suffer at all from a statutorily prescribed physical or mental impairment,

---

1973 (29 U.S.C. §§ 790–794a), or the regulations issued by Federal agencies pursuant to that title." See id.; 29 C.F.R. § 1630.1(c). The Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 1211 et seq.)...." See 29 U.S.C. § 794(d); Texas Bus Lines, 923 F.Supp. at 975.

but the defendant employer treated the impairment (whether actual or perceived) as substantially limiting one or more of her major life activities.  See E.E.O.C. v. Texas Bus Lines, 923 F.Supp. 965, 975 (S.D. Tex. 1996); see also Carrier v. Paige, 159 F.3d 1357, *2 (5th Cir. 1998).

Holaway contends she was discriminated against by Lacking due to a perceived mental disability.  Holaway alleged at the May 24, 2016 hearing that Lacking referred to her in comments to others as "a loose cannon" and a "live wire."  However, those comments do not show that Holaway was perceived to have a handicapping mental disability.  Moreover, Holaway has not specified any adverse employment decision made against her because she was perceived as mentally disabled.

Payne also appears to allege she was discriminated against due to a perceived mental disability when she was referred to PHCP.  Payne contends Lacking commented about Payne's gun ownership as if it was an indication of mental instability.  However, that comment does not show Payne was perceived to have a handicapping mental disability.  Payne was referred to PHCP after she exhibited disruptive workplace behavior.  Payne has not alleged or shown any evidence to support her claim that she was perceived to be mentally disabled.

Since Holaway and Payne have not shown they were perceived to be mentally disabled and that they were discriminated against due to the perceived mental disabilities, Defendant's motion for summary judgment should be granted as to Holaway's and Payne's Rehabilitation Act/ADA claims.

Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendant's motion to dismiss (Doc. 39) be GRANTED IN PART and that Payne's, Holaway's, and Calhoun's constitutional discrimination claims be DISMISSED WITH PREJUDICE.

IT IS ALSO RECOMMENDED that Defendant's motion to dismiss (Doc. 39) Plaintiffs' Title VII claims for lack of exhaustion be DENIED.

IT IS RECOMMENDED that Defendant's motion to dismiss (Doc. 39) be GRANTED IN PART and that Payne's, Holaway's, and Calhoun's Whistleblower Protection Act claims be DISMISSED WITH PREJUDICE.

IT IS RECOMMENDED that Defendant's motion to dismiss (Doc. 39) be GRANTED IN PART and that all of Calhoun's Title VII claims be DENIED AND DISMISSED for failure to timely exhaust administrative remedies.

IT IS RECOMMENDED that Defendant's motion to dismiss (Doc. 39) be GRANTED IN PART and that Holaway's Title VII claims for discrimination in student loan reimbursement and benefits for her foot injury be DENIED AND DISMISSED for failure to timely exhaust administrative remedies.

IT IS RECOMMENDED that Defendant's motion to dismiss (Doc. 39) be DENIED on the issue of exhaustion of Holaway's claim of discrimination in her pay grade and her retaliation claim.

IT IS RECOMMENDED that Defendant's motion for summary judgment (Doc. 39) be GRANTED as to Holaway's Title VII claims for racial discrimination as to her

pay grade, reprisals through ostracism and emails, and a hostile work environment, and that those claims be DENIED AND DISMISSED WITH PREJUDICE.

IT IS RECOMMENDED that Defendant's motion for summary judgment (Doc. 39) be DENIED as to Holaway's Title VII claims of retaliation through denial of a training opportunity and an increase in Holaway's workload.

IT IS RECOMMENDED that Defendant's motion for summary judgment (Doc. 39) be GRANTED as to Payne's Title VII claims of retaliation through issuance of a Letter of Counseling and a Letter of Reprimand, and her hostile work environment claim, and that those claims be DENIED AND DISMISSED WITH PREJUDICE.

IT IS RECOMMENDED that Defendant's motion for summary judgment (Doc. 39) on Payne's Title VII claims of retaliation through denial of a training opportunity, unfavorable performance evaluations, placing Payne on an FPPE, and demotion be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14)** days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 22nd day of June 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge